1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| O&R CONSTRUCTION, LLC, Individually and on Behalf of All Others Similarly Situated, ) | No. |
| Plaintiff, | CLASS ACTION COMPLAINT |
| vs. | |
| DUN & BRADSTREET CREDIBILITY CORPORATION, DUN & BRADSTREET CORPORATION and DUN & BRADSTREET, INC., | |
| Defendants. | |

CLASS ACTION COMPLAINT

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

Now comes plaintiff O&R Construction, LLC ("O&R"), individually and on behalf of all others similarly situated, through counsel, and for its complaint against Dun & Bradstreet Credibility Corporation ("DBCC"), and Dun & Bradstreet Corporation and Dun & Bradstreet, Inc. (collectively, "D&B") (DBCC and D&B are collectively referred to as "defendants" or "Dun & Bradstreet") states and alleges as follows:

## NATURE OF THE ACTION

1.      This is a class action brought on behalf of thousands of small businesses who have been unfairly and unlawfully deceived, misled and cheated by DBCC, as well as D&B. Defendants employ deceptive marketing to sell credit monitoring products under the name "CreditBuilder," misrepresenting the nature, need and value of the products.  Further, the CreditBuilder products do not perform as promised by Dun & Bradstreet.

2.      Defendants' aggressive marketing campaign features high-pressure sales tactics, including misleading form letters, e-mails and sales call scripts, which falsely claim that there are problems on a small business's credit report with Dun & Bradstreet, which the CreditBuilder products can remedy.  The defendants sell small businesses expensive products that purport to improve their credit ratings and correct problems on their reports: CreditBuilder for $799/year, CreditBuilder Plus for $1099/year and CreditBuilder Premium for $1599/year (collectively, the "CreditBuilder products").

3.      The CreditBuilder products do not improve credit ratings as claimed.   In fact, defendants conceal material information about the limitations of the products; and, in any event, the products do not provide the value Dun & Bradstreet claims, or the benefits for which small businesses purchase the products.

4.      Defendants have entered agreements, schemed and conspired, using the overwhelming market power of D&B, to manipulate the relevant credit reporting market in an

CLASS ACTION COMPLAINT

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

anticompetitive manner.  Defendants use exclusionary and predatory practices to monopolize the small business credit reporting and monitoring market in order to force sales of the CreditBuilder products.

## PARTIES

5.      Plaintiff O&R Construction, LLC is a Washington limited liability company with its principal place of business at 2141 SW Dillard Lane, Oak Harbor, Washington, 98277.  O&R was subject to defendants' misleading marketing and was duped into purchasing a CreditBuilder product that did not provide the value promised.

6.      Defendant Dun & Bradstreet Credibility Corporation is a limited liability company organized under Delaware law, with its headquarters and principal place of business at 22761 Pacific Coast Highway, Malibu, California 90265.

7.      Defendants Dun & Bradstreet Corporation and Dun & Bradstreet, Inc. are publicly-traded corporations organized under Delaware law, with their headquarters and principal places of business at 103 John F. Kennedy Parkway, Short Hills, New Jersey 07078.

8.      At all relevant times, defendants licensed, developed, designed, made, marketed, distributed, sold or otherwise introduced the CreditBuilder products into interstate commerce throughout the United States, including the state of Washington and King County, either directly or indirectly, including through third-parties, subsidiaries or other related entities.

9.      For purposes of this action, "DBCC" and "D&B" include any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures and organizational units of any kind of those defendants, as well as their predecessors, successors and assigns, together with their officers, directors, employees, agents and representatives ("related entities"). Further, DBCC, D&B and their related entities acted through their agents and employees, who were within the scope of

CLASS ACTION COMPLAINT

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

their agency and employment at all relevant times. The policies and practices alleged in this complaint to be unlawful were established or ratified at the defendants' highest corporate levels.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and it is a class action in which members of the class of plaintiffs are citizens of states different from those of the defendants. Also, many of the class members reside in states other than the state in which defendants are domiciled.

11.     This Court is a proper venue pursuant to 28 U.S.C. §1391 because many of the acts and transactions giving rise to this action occurred in this District and because: (a) defendants are authorized to conduct business in this District, and have intentionally availed themselves of the laws and markets within this District through the promotion, marketing, distribution and sale of their products in this District; (b) defendants conduct substantial business in this District; and/or (c) defendants are subject to personal jurisdiction in this District.

## FACTS

**History of Dun & Bradstreet's Credit Monitoring Products**

12.     The Dun & Bradstreet name has been synonymous with commercial credit for over 150 years. D&B purports to maintain databases of information about the credit-worthiness of millions of businesses. It purportedly gathers this information from public records, payment information supplied by vendors and self-reported data such as financial performance. D&B claims to compile this information into credit reports and credit ratings for small businesses. D&B licenses its credit reports and credit ratings to others for use in making credit decisions.

CLASS ACTION COMPLAINT

- 3 -

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

13.     Dun & Bradstreet also carries the imprimatur of the federal government, which requires a business to have a D&B-assigned Data Universal Number System ("DUNS") number in order to apply for a government contract.  Given D&B's age, size, reputation and unique institutional role in American and international business, it has a virtual monopoly over small business credit reporting.

14.     Some years ago, D&B developed a credit monitoring product called "Self Awareness Solutions" ("SAS"), which it marketed and sold to small businesses.  Upon information and belief, the SAS product was identical or substantially similar to the CreditBuilder products at issue in this case.

15.     A large number of dissatisfied customers castigated D&B for using "high-pressure, bait-and-switch tactics" to sell SAS products to small businesses.  Customers also complained in droves that the SAS products failed to perform as promised.  By April 2009, the criticism was so harsh that D&B planned "killing [off the credit monitoring] products" because complaints about the products were driving down the company's "Voice of the Customer" score, and dissatisfaction with the products  were resulting in high rates of annual customer attrition.

16.     In order to avoid further scrutiny and litigation over the SAS products, while continuing to reap profits from the credit monitoring products, D&B sold its credit monitoring line of business to DBCC in August 2010 for  $10 million in cash and annual royalties; a deal estimated at $100 million.

17.     D&B continues to maintain post-sale control over the business credit information, credit reporting system and credit rating services that are integral to the CreditBuilder products.  DBCC is nothing more than a "front office" spin-off from D&B that serves as the marketing and sales arm of the SAS products, now re-packaged as the CreditBuilder products.  The symbiotic

CLASS ACTION COMPLAINT

- 4 -

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

relationship between D&B and DBCC to license, market, develop, design, solicit and sell the CreditBuilder products is, according to the terms of the sales agreement, "a long term strategic alliance to develop and co-market products and services." Indeed, as part of the agreement, D&B granted DBCC a unique license to use the Dun & Bradstreet name, and singular access to D&B's database and credit rating information systems.

18.     To wit, DBCC licenses from D&B the Dun & Bradstreet name and brand, and employs trade dress nearly identical to that long used by D&B. Defendants' joint venture trades on the Dun & Bradstreet name, reputation and position in order to market the CreditBuilder products to small businesses across the country:

(a)     Defendants share the Dun & Bradstreet logo on their websites and corporate letterhead;

(b)     Defendants use strikingly similar web domains, www.dandb.com for DBCC, and www.dnb.com for D&B and the websites link to each other;

(c)     DBCC claims that it offers "D&B solutions" to track the credit and creditworthiness of business; and

(d)     DBCC, which was formed in 2010, claims that it has been a primary source of business credibility and credit scoring since 1841, and it dresses itself in the name, reputation and history of D&B: "For over 170 years, millions of businesses have relied on these credit services to pave their path to business success. By 2010, Dun & Bradstreet Credibility Corp. launched a new chapter in this storied history as the company began to offer products to help businesses monitor, manage and build their credit and credibility. In that respect, we consider Dun & Bradstreet Credibility Corp. a '175 year-old startup.'"

CLASS ACTION COMPLAINT

- 5 -

**Defendants Deceptively Induce Class**
**Members to Purchase CreditBuilder Products**

19.     Defendants unfairly leverage Dun & Bradstreet's unique position in the minds of small businesses to sell the CreditBuilder products. DBCC claims it "provides the only real solution available to companies looking to monitor and impact their business credit profile." According to DBCC, "perhaps most important, CreditBuilder gives companies the ability to add favorable credit references to their files to enhance credit scores and ratings." In fact, DBCC trains its sales agents to present CreditBuilder products as those a small business "can't live without." Further, DBCC represents to small businesses the following:

> At D&B Credibility Corp., we make over 1.5 million updates to our database on a daily basis. It could be major transactions like paying vendors or making lease or mortgage payments, but it could also be seemingly smaller transactions like equipment leasing, advertising, shipping packages or underwriting insurance.

> *          *          *

> With all this information flooding into D&B, it's critical that you keep on top of your profile and credit score to help ensure you keep your reputation solid as you forge the relationships and partnerships that will enable your business to grow profitably.

As a result, small businesses are misled into believing that defendants will maintain daily updates on their credit profile and only accurate and up to date information when in reality defendants fail to maintain accurate and updated information on small businesses.

20.     At bottom, defendants lead businesses to believe that, unless they purchase the CreditBuilder products, they will not be able to properly monitor, verify or improve their D&B ratings, thereby running the risk that they will not be able to obtain credit, loans or contracts. Since small businesses rely on their Dun & Bradstreet credit profiles to secure new business and to apply for loans or credit, defendants essentially hold the target customer's credit rating hostage unless the small business buys a CreditBuilder product.

CLASS ACTION COMPLAINT

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

21.     Defendants try to capitalize on the importance of D&B-issued DUNS numbers[1] when soliciting customers for CreditBuilder products.  D&B provides DBCC a roster of DUNS numbers, which form a roster of target customers for sales agents ("sales queues").  By referencing a business's DUNS number, defendants mislead the target customer to believe that the CreditBuilder products are necessary to monitor, verify and dispute items on their Dun & Bradstreet business credit profile.

22.     Defendants routinely stress the importance of a DUNS number and mislead customers into believing that they can obtain a DUNS number by purchasing a CreditBuilder product.  In truth, DUNS numbers are automatically generated by D&B prior to any solicitation of the customer.

23.     Defendants also mislead customers by referencing D&B's propriety ratings when marketing the CreditBuilder products.[2]  DBCC will issue "credit alerts" to target customers, claiming that one of their D&B ratings should cause the customer a concern which only CreditBuilder products can remedy.

24.     After bringing the weight of the Dun & Bradstreet name to bear upon target customers, the defendants employ other unlawful and deceptive sales tactics to instill fear in the minds of target customers. As set forth below, defendants issue uniform solicitations which falsely

---

[1]     A DUNS number is "a unique nine-digit identification sequence used by the world's most influential standards-setting organizations and recognized, recommended, and often required by global corporations, governments, industry, and trade associations." DUNS numbers are identifiers similar to a federal tax ID number, but DUNS numbers are only distributed by D&B. When applying for credit, loans or government bids, businesses are asked to provide their DUNS number. Vendors use a company's DUNS number to pull information on the business, including its financial and credit risks.

[2]     D&B uses several ratings relevant to extensions of credit: (i) a PAYDEX® Score, which is a predictive indicator for paying bills on time; (ii) the Financial Stress Score, which is an indicator of financial stress to the business in the next 12 months; (iii) the Credit Limit Recommendation, which provides guidelines for extending business credit; and (iv) an overall D&B Rating, which addresses the overall assessment of a business.

CLASS ACTION COMPLAINT

- 7 -

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

claim that: (a) "inquiries" have been made about the target customer's credit; (b) the target customer has an "incomplete" credit profile with D&B; and/or (c) the target customer has a Supplier Evaluation Risk ("SER") rating of "High Risk of Financial Stress." Each of these claims causes a small business owner reasonable and understandable concern, especially coming from Dun & Bradstreet. In the end, defendants strong-arm thousands of small businesses into purchasing CreditBuilder products each year by falsely claiming that the products will solve the "problem" or dramatically improve the customer's credit profile.

**Defendants' Misleading Solicitations Are Based on Uniform Training, Scripts and Form Letters**

25.     Defendants train their sales force extensively on how to hard-sell CreditBuilder products to businesses. Sales agents are required to attend a corporate orientation, which includes courses and materials that teach them how to plan, execute and close a sales call, including what talking points to use and how to overcome a target customer's objections.

26.     Sales agents are given very little information about the small businesses listed in their sales queues. Despite this lack of meaningful information about the credit profile or needs of individual target customers, defendants train their sales agents to falsely tell every target customer that there have been multiple "inquiries" into the small business's credit profile. So universal and indiscriminate is this tactic that sales agents frequently inform brand new businesses that there have been inquiries, when the business is too young to have had any, or that a defunct business has had inquiries, when it has been non-operational long enough not to have had any. By way of example, in June, 2011, sales agents from DBCC solicited a small business called "Pansophist" in order to "improve" credit. However, the business had been extinct for over 30 years.

27.     Defendants give their sales agents scripts on how to sell the CreditBuilder products. Sales agents are also given form letters to solicit new customers. These scripts and letters make one

CLASS ACTION COMPLAINT

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

or more of three false statements to solicit customers: (a) the customer's D&B business credit profile is "incomplete"; (b) the customer's SER rating in its D&B business credit profile indicates a "high risk" of financial stress; and/or (c) there has been "an increase in the number of companies both purchasing and monitoring your commercial credit report to assess the risk of working with your business."

28.    Defendants instruct their sales agents to advise target customers that, in order to (a) complete their credit profile, (b) improve their SER rating and/or (c) update and protect their credit profile, they must purchase a CreditBuilder product.  In the telephone script, sales agents tell potential customers, "[w]e need to go over what is currently being sent out, and get your report completed."  Defendants instruct sales agents to go so far as to claim that "[w]e provide the credit reports that dictate the terms that get extended out to businesses."

29.    For example, one set of form solicitation letters reads: "You are receiving this notification because the following Supplier Evaluation Risk (SER) rating has been noted in your D&B business credit profile."  In truth, the SER is merely a sales tool; it is a "sub-score" that does not impact the D&B credit rating.  Moreover, the SER given to a target customer is false, inaccurate, out-dated and/or irrelevant to the target customer's business.  In most cases, defendants lack the vendor information which would be needed to ascribe the target customer a high SER.

30.    Moreover, since sales agents have little to no information on the businesses provided to them in their sales queue, they are trained and scripted to "DRILL DOWN" on target customers, prying into their businesses.  With this information, sales agents can better manipulate potential customers.  For example, when defendants solicit target customers by falsely claiming that there have been numerous inquiries about the customer's credit recently, customers will often ask who would have made such an inquiry.  Depending on the information "DRILLED" out of the customer

CLASS ACTION COMPLAINT

- 9 -

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

throughout the sales call, the sales agent is scripted to claim that the inquiries came from a competitor in the same line of business, a potential vendor inquiring on the creditworthiness of the company or a potential source of new business for the company. For example, if a target customer discloses that it works with the general public, the script instructs the agent to tell the business "[s]ince you work mostly with the general public, more than likely companies pulling your information are the companies you pay your bills to."

31.   The DRILL DOWN method is simply a slick way of carrying out the con. When confronted with a difficulty in closing the sale, sales agents are instructed to "START OVERCOMING ANY OBJECTIONS USING THE INFO YOU HAVE GAINED" about the business during the cold call.

**Defendants Resort to Pure Deception to Induce**
**Class Members to Purchase CreditBuilder Products**

32.   According to a DBCC insider, part of defendants' sales script includes telling target customers that there had been a specific number of inquiries (as many as 25) about the customer's business credit report, and that there was negative information in the report. Of course, the only way to update or improve the report, according to the agent, was to purchase a CreditBuilder product.

33.   In truth, sales agents are actually given little information regarding the businesses on their sales queue and do not have real or accurate information on the number of inquiries made about a given business. When a potential customer asks who has been pulling their credit reports, the sales agents are scripted to reply, "I don't have access to see the companies pulling your information, but when we validate your file, you will have the ability to see who each one of these companies are by industry, as well as what they are looking at so you know where their priorities lie [sic] and where you need to focus your attention." Of course, the only way to "validate your file" is to purchase a CreditBuilder product.

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

34.     In truth, even after purchasing a CreditBuilder product, customers are **not** able to see who has made inquiries into their credit or what the priorities of the supposed inquirers are.

35.     Defendants also solicit customers by inputting inaccurate vendor payment information and "delinquencies" in credit reports and falsely reporting to the customer that they have delinquent or unpaid vendor accounts posted on their credit file.  Customers are understandably shocked to hear the claim that they have a delinquent account when they know their accounts payable are current.  Once again, sales agents do not really have information about delinquencies and are trained to respond that they cannot give out further information about the delinquencies.  Of course, sales agents tell the target customers that the only way a customer can discover and truly dispute these "delinquencies" is by purchasing a CreditBuilder product.

36.     In truth, even after purchasing a CreditBuilder product, customers are **not** able to discover or truly dispute supposed delinquencies.

37.     Further, after being forced to purchase the CreditBuilder products in order to repair and/or improve the inaccurate credit information, and after reviewing their credit reports, customers discover that there were no real delinquencies or inaccurate references in their credit profile.  In those cases where the customer disputes vendor delinquencies and demands to know the identity of the vendor reporting the delinquency, DBCC refuses to identify the phantom vendor (often citing "privacy concerns") and ultimately will remove the false vendor delinquency from the report but only after the customer has paid for the product.  On other occasions, defendants tell the customer that the vendor did not answer the dispute; in these cases, defendants let the delinquency dispute "die on the vine."  Taking one example, small business owner Eitan Shmueli has maintained a successful and profitable business in Hollywood, Florida named Super Color, Inc. for over 20 years.  After attempting  to lease a piece of equipment and being denied by all major companies, Mr. Shmueli

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

came to discover that Super Color, Inc.'s D&B report showed a very low Paydex score, as well as seven "delinquent" vendor payments. This information was false. After being forced to purchase D&B's CreditBuilder products in order to correct the inaccurate information, Mr. Shmueli opened up disputes on each "unpaid" invoice and ultimately each were removed, albeit without explanation by defendants as to how or why the inaccurate information got in the report, and further without identifying the purported vendors who purportedly reported the delinquent payments. Plaintiff is informed and believes that hundreds, if not thousands, of small businesses have been subjected to the same fraudulent systematic practice by defendants concerning "delinquent" vendor payments.

38.     Indeed, defendants' customer service representatives, sales agents and websites throw up numerous road blocks to those business owners who attempt to dispute inaccurate "delinquencies" *without* purchasing a CreditBuilder product. Defendants make it virtually impossible for a business owner to dispute negative credit references even though business owners should be allowed to dispute negative references for free.

39.     DBCC also applies a nonsense category called DUNS Support Status ("DS Status") to any business who has not purchased a CreditBuilder product, implying that the business is in credit jeopardy or there is something wrong with its DUNS number. Defendants train their sales agents to tell target customers that a business in "DS Status" will be perceived by the business community as either a start-up with no financial record or a struggling company that is on the verge of failure. Of course, sales agents offer "verification" to remove this false and misleading appellation through the CreditBuilder products for the cost of one of the products, as well as a "one time activation fee of $149 just to set up the account."

CLASS ACTION COMPLAINT

- 12 -

40.     Small business credit reports accessed through CreditBuilder products contain similar, unexplained and unidentified negative items; *e.g.*, $50 accounts delinquencies, which are inconsistent with the customer's business practices.

**Defendants Solicit Class Members with**
**Inaccurate, Outdated or Fabricated Information**

41.     According to a former DBCC employee, the information in the sales queues is gathered from outdated D&B files or is merely basic information from a Secretary of State's website. Defendants' information is so unreliable that sales agents frequently solicit businesses that have filed for bankruptcy, no longer exist or have changed ownership.

42.     At bottom, DBCC sales agents are conducting "cold calls" to the businesses on their sales queues. The information contained in the queues lacks accurate substantive information on the business or its credit profile; sometimes the contact information in the queue is also incorrect.  In fact, sales agents are trained to use the words "commercial credit report" in their sales pitch even though sales agents often have little or no information on the business's credit history.

43.     Nor do defendants conduct any meaningful investigation on a business's credit report in order to confirm that their "proprietary" scores and ratings are accurate before publishing the results – or before DBCC solicits businesses to purchase its CreditBuilder products.

44.     Most important, the sales queues do not provide the sales agents with an actual or accurate  number of commercial credit inquires (if any) made for a given business.  That is, one of the fundamental aspects of the DBCC sales pitch is the intentional misrepresentation of the number of inquires made about a business's credit profile.  Defendants have adopted this grossly dishonest scheme as policy, instructing their sales agents to simply fabricate a number of inquires  out of thin air, in order to scare customers into purchasing CreditBuilder products.

CLASS ACTION COMPLAINT

- 13 -

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

45. Over the years, class members have complained that their credit has been artificially downgraded, misrepresented and ultimately ruined by false and inaccurate credit reporting or phantom inquires that never appeared on their credit profile.

46. In the final analysis, defendants are colluding to negligently, recklessly or intentionally falsify information in small business credit reports, which defendants use to persuade small businesses to purchase an unneeded CreditBuilder product. Upon information and belief, Dun & Bradstreet's small business credit reports contain inaccurate information.

47. Dun & Bradstreet's proprietary ratings are time-sensitive and need to be updated with current information from a sufficient number of sources. The "Paydex score" for credit worthiness is based upon payment history and *current* re-payment capabilities, as reported by trade references. D&B must have *three or more* pieces of trade information in order to calculate a Paydex score. Defendants do not keep the information about small businesses' re-payment capabilities current, and they issue scores without sufficient trade information.

48. Similarly, Dun & Bradstreet's "commercial credit score" is time sensitive, since it is based on the likelihood of a business becoming severely delinquent in its payments over *the next 12-month period*. Again, D&B's information is not kept up to date, so this score is inaccurate.

49. Dun & Bradstreet also "predicts" the likelihood that a business will experience financial stress over *the next 12-month period*. Financial stress is defined as legal action by a creditor, out-standing debts, receivership or reorganization or arrangements with creditors. This information must necessarily be updated frequently to determine whether any of these contingencies have or are likely to occur.

50. In fact, Dun & Bradstreet fails to perform even the most basic updates of a business's change of address or trade references.

CLASS ACTION COMPLAINT

- 14 -

51.     In summary, Dun & Bradstreet's credit reports, scores and ratings are lacking critical data needed to compile a true and accurate snapshot of a business's credit profile.  Rather, small businesses must battle D&B to keep their business information accurate and up-to-date.  To profit on this discrepancy, defendants have introduced the CreditBuilder products, seeking to capitalize on a problem of their own creation.  To compound the injuries defendants inflict on class members, those who buy the CreditBuilder products and update their profiles with true and accurate information find that their credit scores and rating stay the same.

**Class Members Purchase Worthless Products**
**that Fail to Work as Defendants Promise**

52.     Customers are also solicited to purchase CreditBuilder products as a way to add "trade references" to their credit profile.[3]  Sales agents solicit customers by informing them that, if they add trade references to their credit profile through a CreditBuilder product, their D&B scores will improve.  Defendants' sales script states:

> So while you have access to your information, you are going to submit to us what we call trade references.  Basically you are going to give us the names and basic information about the companies you are paying your bills to, we will contact and gather all your payment history for the last two years, and based off this information create your scores.  This way the companies will have the information they need to make these evaluations, and you know you will be getting the best terms and rates with your vendors and suppliers.

53.     At no time do defendants or their sales agents disclose critical a myriad of restrictions and limitations on the trade references that can be submitted through the CreditBuilder products.  In fact, defendants disqualify many trade references submitted through the CreditBuilder products according to internal rules that are never disclosed to customers.  One such restriction is this.  D&B

---

[3]     "Trade references" are evidence of a business's commercial payment history with its vendors and suppliers. DBCC claims this history is a component of a business's D&B ratings. DBCC offered to add additional trade references to a business's profile through the CreditBuilder products (four references for the standard product, 12 for the Plus edition and 25 for the Premium edition).

CLASS ACTION COMPLAINT

- 15 -

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

already independently collects trade references from over 8,000 creditors that regularly report to D&B. D&B calls these "trade tape." Defendants do not disclose to customers that any reference submitted through the CreditBuilder products will be rejected if it is trade tape. Thus, sufficient trade references are available to defendants without the need for active companies like plaintiff to purchase CreditBuilder products. Defendants nevertheless mislead companies such as plaintiff into purchasing CreditBuilder products to add unneeded references to their D&B profiles. In addition, defendants disqualify many trade experiences as an "invalid trade," including bank references, payments to utilities and gas companies, credit card companies and landlords. Again, these disqualified trade references are not disclosed to the customer at any time during the sales process.

54.    Despite following the CreditBuilder product protocols, customers find that the product has failed to improve their business credit score or report, or otherwise perform as defendants promised.

**Businesses Must "Pay to Play" to Maintain
a Favorable Credit Rating and Score**

55.    CreditBuilder products must be renewed on an annual basis. When existing customers are satisfied with a strong credit score and report, they may choose not to renew their CreditBuilder product subscription. After expiration, these customers find that their D&B credit rating has fallen dramatically and they have been classified by DBCC as in financial risk and possibly failure. This occurs because, when a customer stops paying for CreditBuilder services, defendants intentionally lower the customer's D&B score and rating.

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

## TRANSACTIONS OF THE NAMED PLAINTIFF

**Plaintiff O&R**

56.     O&R has been owned by Orin and Robyn Kolaitis since 2004.  The company relies on government contracts for much of its business, and is required to have a DUNS number in order to remain eligible to contract with the federal government.

57.     One of the defendants' sales agents told Mrs. Kolaitis over the phone that O&R's credit rating was very low, that the company was rated a "severe risk" and that there were some negative payment experiences on its credit report.  This is a uniform sales misrepresentation used by defendants to induce plaintiff to purchase the CreditBuilder products.  These "negative payment experiences" included (i) a cash account purportedly opened in 2011 in the amount of $50 and (ii) a "slow pay" account.  These negative payment experiences were erroneous.

58.     When Mrs. Kolaitis explained that the claims were untrue, the sales agent told her that she could (a) contest the erroneous items on her report and (b) submit trade references to improve her score – if she bought the CreditBuilder product.

59.     Defendants' sales agent failed, by design, to inform Mrs. Kolaitis that any government-related credit reporting issue can be addressed for free.  Instead, the agent misled her into buying a product that she did not need.  The sales agent also failed to inform Mrs. Kolaitis that there were restrictions on the trade references which could be submitted.

60.     In or about May 2012, O&R bought a CreditBuilder product for (a) an activation fee of approximately $150 and (b) 12 monthly $60 payments.

61.     Through the CreditBuilder product, Mrs. Kolaitis contested the erroneous items on O&R's credit report.  Initially, some of these items were removed.  Mrs. Kolaitis also submitted

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

trade references for O&R to improve its credit score, but before she did so, she contacted each reference to confirm that the information she was submitting was correct.

62.     When the trade references did not appear on O&R's credit profile, Mrs. Kolaitis contacted defendants for an explanation. Defendants told her that they could not confirm any of the trade references, something Mrs. Kolaitis had been able to do.

63.     While at The Home Depot, Mrs. Kolaitis learned The Home Depot had decreased O&R's business credit line by $8,000 solely based on her business's D&B report. The Home Depot told her that until the credit report improved, it would not increase the line of credit to what it had been prior to the negative report. Based on D&B's representations that CreditBuilder could improve her credit, Mrs. Kolaitis then purchased one of the products.

64.     Mrs. Kolaitis was shocked to hear this news since O&R had always had good credit. She soon learned that defendants had *not* removed all of the erroneous items from O&R's credit profile and had instead placed the company in a "1400 high risk category."

65.     Defendants also listed O&R as having no PAYDEX number, since they had rejected the trade references Mrs. Kolaitis had submitted. The reason for this rejection was that: Dun & Bradstreet independently collects trade references from about 8,000 creditors that regularly report to it; these references are called "trade tape." Defendants have a secret, internal rule that trade references submitted through CreditBuilder will be rejected if they already appear on trade tape. This restriction is not disclosed to customers when purchasing CreditBuilder products.

66.     As stated above, defendants apply additional hidden restrictions to trade references submitted through CreditBuilder, including, (i) D&B will only consider trade references from companies that it already monitors and (ii) D&B will not accept trade references from internationally-based companies.

CLASS ACTION COMPLAINT

- 18 -

67.     Due to defendants' undisclosed restrictions on trade reference submissions, they rejected the trade references submitted by Mrs. Kolaitis and her purchase of the CreditBuilder product did nothing to improve her Dun & Bradstreet rating and scores.

## CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this lawsuit on behalf of itself and the following proposed class (the "Class"), pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3):

> **(A)   WASHINGTON CLASS: ALL PERSONS WHO PURCHASED DEFENDANTS' CREDITBUILDER PRODUCTS IN THE STATE OF WASHINGTON.**
>
> **(B)   MULTISTATE CLASS: ALL PERSONS WHO PURCHASED DEFENDANTS' CREDITBUILDER PRODUCTS IN THE UNITED STATES.**

69.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

70.     Specifically excluded from the Class are defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers or entities controlled by defendants, and their heirs, successors, assigns or other persons or entities related to or affiliated with defendants and/or their officers and/or directors, the judge assigned to this action and any member of the judge's immediate family.

71.     ***Numerosity***: The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable. While the exact number and identities of members of the Class are unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes and avers that there are thousands of class members.

72.     ***Commonality***: Plaintiff and class members' claims derive from a common core of salient facts and share many of the same legal claims. There are questions of fact or law common to

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

members of the Class, which predominate over any questions affecting any individual members, including, but not limited to, the following:

(a)     whether defendants co-marketing of CreditBuilder products and services to the marketplace deceptively induced plaintiff and members of the Class into the mistaken belief that the purchase of CreditBuilder products would improve credit ratings and solve purported problems with credit reports;

(b)     whether defendants were unjustly enriched through the above mentioned conduct of selling CreditBuilder products without disclosing restrictions;

(c)     whether defendants breached their express and implied contracts with small business consumers who purchased CreditBuilder products;

(d)     whether plaintiff and members of the Class have sustained ascertainable losses by reason of defendants breach of contract and, if so, the proper measure of those losses;

(e)     whether plaintiff and members of the Class have a right to collect damages and/or a refund; and

(f)     whether plaintiff and members of the Class are entitled to injunctive and/or other equitable relief.

73.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class in that plaintiff's claims arise from the same course of conduct by DBCC that affects class members. Plaintiff, like other class members, purchased CreditBuilder products through unlawful marketing practices by defendants, including through the deceptive, misleading and false solicitations and/or representations regarding the customer's credit worthiness and false inquiries on a customer's credit. Plaintiff and members of the Class were fraudulently induced to purchase CreditBuilder products through promises of "improving," "repairing" and/or "monitoring" credit by, among other things, adding trade references but were denied that benefit due to DBCC's internal rules that were undisclosed to customers. Plaintiff, like other class members, purchased CreditBuilder products and

CLASS ACTION COMPLAINT

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

did not receive the full value promised by defendants, which is deceptive, misleading, constitutes a breach of contract and unjustly enriched the defendants. Plaintiff and class members suffered monetary losses as a result of defendants' above mentioned course of conduct. Further, plaintiff's claims are typical in that all were harmed by defendants' negligent, reckless and/or fraudulent practice of maintaining inaccurate and even intentionally false information on customers' business credit reports, including falsely reporting "delinquent" vendor payments and that a business was in severe financial distress and/or was "likely to fail."

74. ***Adequacy***: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's claims are coextensive with, and not antagonistic to, the claims of other class members. Plaintiff is willing and able to vigorously prosecute this action on behalf of the Class. Plaintiff's attorneys are experienced in the area of representative and class actions and have successfully represented plaintiffs in numerous such actions.

75. Plaintiff brings this action under Rule 23(b)(3) because common questions of law and fact predominate over issues that are individual to members of the Class. The proposed Class is sufficiently cohesive to warrant class and representative treatment.

76. Upon information and belief, defendants have the technology and records which would permit plaintiff a plausible class-wide method for proving the case. Certification under Rule 23(b)(3) is also appropriate because a class action is superior to other available methods for the fair and efficient adjudication of this action. Given the small damage amounts per class member, the expense of litigating each class member's claim individually would be so cost prohibitive as to deny class members a viable remedy. Plaintiff envisions no unusual difficulty in the management of this action as a class action.

CLASS ACTION COMPLAINT

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

- 21 -

77.     Plaintiff also brings this action under Rule 23(b)(2) because defendants have acted or refused to act on grounds generally applicable to all members of the Class, thereby making final injunctive relief concerning the Class as a whole appropriate. In the absence of appropriate injunctive relief, defendants will continue their unfair and deceptive business practices. Defendants' uniform conduct towards plaintiff and the other members of the Class makes certification under Rule 23(b)(2) appropriate.

## COUNT I

### Violation of §1 of the Sherman Act

78.     Plaintiff realleges and incorporates by reference the allegations contained in the above-referenced paragraphs as if fully set forth herein.

79.     As set forth throughout this Complaint, defendants engaged in a contract, combination or conspiracy in restraint of interstate trade, in violation of 15 U.S.C. §1.

80.     Defendants were each a party to a contract (*viz.*, the sales agreement between D&B and DBCC to transfer the credit monitoring line of business, as well as the licensing and royalty agreements), combination or conspiracy (*i.e.*, the shared Dun & Bradstreet name and trade dress, which leveraged the unique role and power of D&B to sell the DBCC CreditBuilder products).

81.     The foregoing concerted action, undertaken with unity of purpose and a common design, imposed an unreasonable restraint on trade, *i.e.*, by virtue of the D&B-DBCC scheme, the only credit monitoring or building product available in the market to address Dun & Bradstreet small business credit reports was the CreditBuilder product. That is, the agreements produced an adverse, anticompetitive effect within the relevant market. Given Dun & Bradstreet's overwhelming market power and the importance of its DUNS numbers to federal contracts, the relevant geographic market is national.

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

82.     As a result of these antitrust violation, members of the Class each sustained injury and measurable damages, *viz.* and *inter alia*, the purchase price of the CreditBuilder products.

## COUNT II

### Violation of §2 of the Sherman Act

83.     Plaintiff realleges and incorporates by reference the allegations contained in the above-referenced paragraphs as if fully set forth herein.

84.     As set forth throughout this Complaint, defendants have combined or conspired to monopolize the DUNS number-related credit monitoring and building part of interstate commerce, in violation of 15 U.S.C. §2.

85.     Defendants possess monopoly power over small business credit reporting related to DUNS numbers.   That is, only D&B can manipulate, edit and release small business credit information from reports generated by DUNS numbers.  D&B has granted to DBCC an exclusive license which constitutes a monopoly over the submission by small businesses of information to supplement, correct or monitor their D&B credit reports and scores.  As set forth in Count I, the relevant market is well- and easily-defined as the national small business credit reporting market, given the preeminent importance of Dun & Bradstreet.

86.     Defendants have willfully created and maintained their monopoly power through the exclusionary and predatory conduct set forth throughout this Complaint, including, *inter alia*, the cloaking of CreditBuilder in the Dun & Bradstreet name and necessity, the unique license granted by D&B to DBCC to access information from the D&B database and the sales tactics which falsely claim that class members need CreditBuilder products to verify their Dun & Bradstreet credit profiles.

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

87.     As a result of these antitrust violations, members of the Class each sustained injury and measurable damages, *viz.* and *inter alia*, the purchase price of the CreditBuilder products.

## COUNT III

### Violation of Washington's Consumer Protection Act

88.     Plaintiff realleges and incorporates by reference the allegations contained in the above-referenced paragraphs as if fully set forth herein.

89.     As set forth throughout this Complaint, defendants engaged in unfair and deceptive acts and practices, in violation of Rev. Code Wash. §19.86.020.

90.     Defendants' unfair and deceptive acts described in this Complaint were undertaken in the course of commerce, and involve the public's interest in transparency, accurate information and products with value promised.   The unfair and deceptive acts had the capacity to deceive a substantial portion of the public, and did in fact so deceive.

91.     As a direct and proximate result of the unfair and deceptive acts as described, the plaintiff and the class members suffered injury to their business and/or property – e.g., the purchase price of the CreditBuilder products.

## COUNT IV

### Negligent Misrepresentation/Concealment

92.     Plaintiff realleges and incorporates by reference the allegations contained in the above-referenced paragraphs as if fully set forth herein.

93.     Defendants made the following negligent representations of fact:

(a)     that DBCC was a part of D&B in a way that it was not;

(b)     that there had been "inquiries" into potential customers' credit profiles when there had not been;

(c)     that a potential customer's credit profile was "incomplete" when it was not;

CLASS ACTION COMPLAINT

- 24 -

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

1          (d)    that a potential customer's SER rating indicated "high risk" when it did not, or

2  when that rating was inappropriate;

3          (e)    that a potential customer's credit report contained a "delinquency" or

4  "inaccuracy" when it did not;

5          (f)    that customers would be able to dispute in a meaningful way inaccurate

6  information on their credit profiles after purchasing CreditBuilder products, and/or that those

7  products would improve credit scores;

8          (g)    that a potential customer's "DS Status" exposed them to risk, when it did not;

9  and/or

10         (h)    that DBCC had accurate, up-to-date information relevant to a potential

11  customer's business, when it did not.

12     94.     Despite a duty to disclose, defendants concealed the following facts:

13         (a)    that DBCC was not a part of D&B;

14         (b)    that there were restrictions on "trade references" submitted through the

15  CreditBuilder product;

16         (c)    that non-renewal of a CreditBuilder product subscription could harm a

17  customer's credit report or rating;

18         (d)    that CreditBuilder's dispute process was ineffective; and/or

19         (e)    that CreditBuilder would not improve a customer's credit profile or rating.

20     95.     Each of the representations or concealments of fact referred to in the preceding

21  paragraphs was material to the transaction at hand, *viz.*, whether to purchase a CreditBuilder product.

22     96.     Each of the representations or concealments was made negligently or with utter

23  disregard and recklessness as to their falsity.

24

25

26

CLASS ACTION COMPLAINT

- 25 -

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

97.     Each of the representations or concealments was made negligently and/or recklessly, misleading another into relying upon them, or with knowledge that the representations or concealments were likely to be relied upon by a reasonable customer.

98.     Class members suffered injury proximately caused by defendants' misrepresentations or concealments of material fact.

## COUNT V

### Fraudulent Concealment

99.     Plaintiff realleges and incorporates by reference the allegations contained in the above-referenced paragraphs as if fully set forth herein.

100.     Defendants withheld and suppressed material facts as set forth throughout this Complaint, and as identified in Count IV, which are incorporated herein by reference.

101.     Defendants had a duty to disclose the truth about these matters, but failed to do so.

102.     Defendants were aware that their claims regarding CreditBuilder products were false.

103.     Nevertheless, defendants concealed the material facts as set forth throughout this Complaint, and as identified in Court IV, and took steps to prevent plaintiff and the Class from learning the true facts regarding CreditBuilder.

104.     The concealment of the true facts from plaintiff and members of the Class was done with the intent to induce plaintiff and members of the Class to purchase CreditBuilder products.

105.     The reliance by plaintiff and the Class was reasonable and justified in that defendants appeared to be, and represented themselves to be, reputable businesses.

106.     As a direct and proximate result of the fraud and deceit alleged, plaintiff and members of the Class suffered actual damages in that they have been deprived of the benefit of their bargain

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

and have spent money purchasing CreditBuilder at a price premium when it actually had significantly less value – indeed, no value – than was reflected in the price they paid for it.

107.    Each of the concealments was made falsely, with knowledge of its falsity, or with utter disregard and recklessness as to its falsity.

108.    Each of the concealments was made with the intent of misleading another into relying upon it, or with knowledge that the concealment was likely to be relied upon by a reasonable customer.

## COUNT VI

### Breach of Contract

109.    Plaintiff realleges and incorporates by reference the allegations contained in the above-referenced paragraphs as if fully set forth herein.

110.    Defendants offered and the class members accepted sales of the CreditBuilder products.  As part of this agreement, defendants promised to provide a product that would provide value related to credit monitoring and credit building.  These promises are set forth throughout this Complaint; *e.g.*, defendants promised that the product would allow class members to submit trade references.

111.    In exchange, class members promised to pay defendants the purchase price of the product together with any activation fee.  The class members performed their obligations.

112.    Defendants breached their obligations by providing a product which failed to perform as promised.

113.    As a result of this breach of contract, the class members suffered injury.

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

**COUNT VII**

**Unjust Enrichment**

114. Plaintiff realleges and incorporates by reference the allegations contained in the above-referenced paragraphs as if fully set forth herein.

115. As set forth throughout this Complaint, defendants have been unjustly enriched.

116. The class members conferred on defendants a benefit, *viz.*, the purchase price of the CreditBuilder products together with any activation fees.

117. Defendants appreciated or knew that they were receiving a benefit.

118. Defendants accepted and retained the benefit. Under the circumstances described in this Complaint, it is inequitable for defendants to retain benefit.

**PRAYER FOR RELIEF**

WHEREFORE plaintiff O&R, individually and on behalf of the Class, demands judgment as follows:

A. An order certifying this as a class action, appointing the plaintiff as class representative and appointing undersigned counsel as class counsel;

B. Statutory damages, including treble damages, attorneys fees and costs, as appropriate, pursuant to the Sherman Act and/or the Washington Consumer Protection Act;

C. Compensatory and/or actual damages;

D. Punitive damages, as appropriate;

E. Remedies in equity, including disgorgement, as appropriate;

F. Pre- and post-judgment interest, as appropriate; and

G. An order enjoining defendants from committing further wrongful marketing and sale of the credit monitoring products at issue in this case, including, *inter alia*, failing to disclose restrictions on trade references.

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: December 13, 2012                    STRITMATTER KESSLER WHELAN COLUCCIO

BRAD J. MOORE, WSBA #21802
200 Second Avenue West
Seattle, WA  98119
Telephone:  206/448-1777
206/728-2131 (fax)
brad@stritmatter.com

ROBBINS GELLER RUDMAN & DOWD LLP
FRANK J. JANECEK, JR.
CHRISTOPHER COLLINS
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)
frankj@rgrdlaw.com
chrisc@rgrdlaw.com

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com

SHANBERG, STAFFORD & BARTZ LLP
ROSS E. SHANBERG
AARON A. BARTZ
19200 Von Karman Avenue, Suite 400
Irvine, CA  92612
Telephone:  949/622-5444
949/622-5448 (fax)
rshanberg@ssfirm.com
abartz@ssfirm.com

CLASS ACTION COMPLAINT

- 29 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LANDSKRONER GRIECO MERRIMAN, LLC
JACK LANDSKRONER
DREW LEGANDO
1360 West 9th Street, Suite 200
Cleveland, OH  44113
Telephone:  216/522-9000
216/522-9007 (fax)
jack@lgmlegal.com
drew@lgmlegal.com

Attorneys for Plaintiff

CLASS ACTION COMPLAINT

Stritmatter Kessler Whelan Coluccio
200 Second Avenue West, Seattle, WA 98119
Telephone: 206/448-1777 • Fax: 206/728-2131