# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

O&R CONSTRUCTION, LLC; DIE-MENSION CORPORATION; VINOTEMP INTERNATIONAL CORPORATION; CPRINT, INC.; ALTAFLO, LLC; and FLOW SCIENCES INC., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

DUN & BRADSTREET CREDIBILITY CORPORATION; DUN & BRADSTREET CORPORATION; and DUN & BRADSTREET, INC.,

Defendants.

C12-2184 TSZ

ORDER

THIS MATTER comes before the Court on plaintiffs' third unopposed motion for preliminary approval of class action settlement, docket no. 238. The motion was previously granted in part and deferred in part, with direction to the parties to file a supplemental brief, along with revised proposed forms of notices to class members, a revised stipulation of settlement, and any proposed opt-out form. *See* Order (docket no. 241). Having reviewed plaintiffs' supplemental brief, docket no. 250, and supporting materials, docket nos. 251 and 252, the Court enters the following Order.

ORDER - 1

When plaintiffs first sought approval of the parties' settlement, they estimated that the class, comprised of all persons and entities in California, New Jersey, North Carolina, Ohio, and Washington who purchased a CreditBuilder product from August 1, 2010, to the present, had over 35,000 members. *See* Order (docket no. 223). In connection with their second attempt to obtain approval, plaintiffs represented that the class contains 89,719 members. Minute Order (docket no. 234). On plaintiffs' third try, despite an earlier end date of the class period (namely January 24, 2017, rather than "the present"), the class size grew to 95,502 members. *See* Order (docket no. 241). The average recovery was anticipated to be $18.93 per class member, with 6,406 members (6.7%) receiving $0, almost a third of the class being paid $5 or less, and roughly half of the class getting $10 or less, while 67 entities (0.07%) each recovered over $500. *Id.* at 4 & n.2.

In their supplemental brief, plaintiffs propose to now modify the class definition, to set forth a much more limited class period, *i.e.*, from August 1, 2010, to February 28, 2015, and to restrict the types of products covered by the settlement. *See* Plas.' Supp. Br. at 10 & n.8 (docket no. 250). If the class were so altered, it would consist of 64,544 members, and the Settlement Administrator estimates that the average award would be $28.01 per member, with 3,317 members (5.1%) getting $0, just under 30% of the class recovering $10 or less, and over half of the class receiving $20 or less, while 37 entities (0.06%) were each paid in excess of $200. *See* Joaquin Decl. at ¶¶ 5-7 (docket no. 252).[1]

---

[1] The Court is very reluctant to rely on the Settlement Administrator's figures because he has made the same mathematical error identified earlier. *See* Order at 3 n.1 (docket no. 241). Instead of using the aggregate of **all** Net Purchase Amounts ($87,979,007.51) as the denominator in calculating each class

Given the tremendous fluctuations in class size estimates and proposed pro rata awards, the Court has significant doubt about whether the class has been defined in a principled fashion, as opposed to merely for the purpose of obtaining a desired result.

The Court also concludes that the pro rata distribution of settlement funds, which the parties have persisted in proposing despite the Court's suggestion otherwise, <u>see</u> Order at 5 (docket no. 223); Minute Order at 3 n.1 (docket no. 234), cannot be approved. Perhaps the most telling evidence of the difficulty that the pro rata scheme poses is the Settlement Administrator's inability on two separate occasions to correctly determine the amounts each class member should receive. In addition, the data required to evaluate the fairness, reasonableness, and adequacy of the pro rata scheme is too complex and voluminous to be adequately explained or disclosed in notices to class members. For example, throughout both the email and postal notices proposed by the parties, class members are told that if they "do nothing," they "will receive a check as part of the settlement." <u>See</u> Ex. A-1 at 1, 2, 3, 10 (docket no. 251-1); Ex. A-2 (docket no. 251-1 at 67-68). This representation is, of course, not true. If the class period and the meaning of "CreditBuilder product" were redefined as currently proposed, at least 3,317 class members would not receive any check. An additional, unknown number of class members, whose Net Purchase Amount does not equal or exceed a certain threshold[2]

---

member's pro rata share of the Net Settlement Fund, the Settlement Administrator has again based his computations on the sum of the Net Purchase Amounts ($88,099,642.50) for the subset of class members that had Net Purchase Amounts exceeding zero, which results in a lower award for each class member than required by the parties' Third Amended Stipulation of Settlement. <u>See</u> Joaquin Decl. at ¶¶ 4 & 5 (docket no. 252); <u>see also</u> 3d Am. Stip. at ¶ 9.1(a), Ex. 1 to Plas.' Supp. Br. (docket no. 251-1 at 20).

[2] A Net Purchase Amount of $0.30 would yield a pro rata share of only $0.006, whereas a Net Purchase Amount of $0.49 would result in a pro rata figure of $0.01. The Settlement Administrator has stated that

ORDER - 3

1 would also not be sent a check because their pro rata share of the settlement fund would
2 be less than $0.01.  To sufficiently explain the proposed settlement, the notice would
3 need to **at least** disclose that some class members, perhaps as much as 8.1% of the class,
4 will recover nothing and will not receive any check.

The table of award amounts provided by the Settlement Administrator, and reproduced in the proposed email notice to class members, Joaquin Decl. at ¶ 7 (docket no. 252); Ex. A-1 at 12-13 (docket no. 251-1), does not offer a meaningful way to understand how the pro rata recoveries are distributed.  The segregation of award amounts into $2, $3, $5, $10, and $100 ranges is arbitrary and not statistically based, and class members cannot determine from this table whether their projected recoveries are within one or more standard deviations of the mean, or the approximate number of entities receiving more or less than they are.  For example, the table reflects that 15,609 class members will receive between $10.01 and $20, but whether these awards are evenly distributed within such range or clumped near the bottom, top, or middle of the range is unknown, and a class member expecting to get $10.50 would not know whether the 15,608 others within the same subset are entitled to more, less, or the same amount.  A much more thorough statistical analysis would need to be included in the class notices before the pro rata methodology could pass muster, but the Court is not convinced that, even if the parties could offer the type of clarity that would be required, the average class member would comprehend the necessarily complicated explanations.

---

the lowest Net Purchase Amount is $0.01, Joaquin Decl. at ¶ 5 (docket no. 252), but he has not indicated how many potential class members have Net Purchase Amounts below either $0.30 or $0.49.

ORDER - 4

Finally, although mindful of the provision of the parties' settlement that calls for defendants to add, for a period of at least two years, a full-time employee whose primary responsibility will be to respond to, and enhance the quality of responses to, trade disputes, <u>see</u> 3d Am. Stip. at ¶ 4.1 (docket no. 251-1), the Court will not approve a settlement in which a substantial portion of the class will forfeit all rights of action in exchange for no, or virtually no, monetary award.  Checks for mere pennies or a few dollars seem not to warrant either the stamps to send them or the efforts to cash them, and the Court cannot endorse a scheme that might incur more in postal expenses than is distributed and that is likely to simply funnel the settlement funds to the cy pres recipient.

**Conclusion**

For the foregoing reasons, the deferred portion of plaintiffs' third unopposed motion for preliminary approval of class action settlement, docket no. 238, is DENIED without prejudice.  The class defined in the Order entered May 5, 2017, docket no. 241, will remain certified for settlement purposes pending further order.  Any renewed motion for preliminary approval of class action settlement shall be filed within sixty (60) days of the date of this Minute Order.  No extension of this deadline will be granted without a hearing attended by counsel for all parties.

The parties are ADVISED that the Court will decline to approve any proposed settlement in which the proceeds are distributed in a pro rata fashion or in which any class member is awarded less than $10.  Counsel shall consider whether persons or entities with Net Purchase Amounts not exceeding a minimal amount or $0 should be excluded from the class because they have already received refunds or credits for all, or

virtually all, sums spent on CreditBuilder products, and would not have the requisite injury or damage to pursue a claim against defendants. Counsel are also again encouraged to define two or more subclasses to which different fixed amounts could be paid, depending on the nature of the CreditBuilder products they purchased or some other correlative factor. *See* Minute Order at 3 n.1 (docket no. 234).

If a renewed motion cannot be timely filed, the parties shall file a Joint Status Report by the same deadline, indicating whether the Court should (i) rule on the motion to dismiss, docket no. 95 in Case No. C14-1021, brought by defendant Dun & Bradstreet Credibility Corporation, (ii) decertify the class, (iii) set deadlines by which an amended consolidated complaint must be filed, and (iv) issue a scheduling order. Such Joint Status Report shall set forth the extent to which further discovery is required and how long the parties anticipate such discovery will take, indicate when the parties will be prepared for trial, and identify any scheduling conflicts within the three months preceding and the six months following the parties' proposed trial date.

The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 13th day of October, 2017.

/s/ Thomas S. Zilly

Thomas S. Zilly
United States District Judge