1

2

3

4    UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
5              AT SEATTLE

6   O&R CONSTRUCTION, LLC;
     DIE-MENSION CORPORATION;
7   VINOTEMP INTERNATIONAL
     CORPORATION; CPRINT, INC.;
8   ALTAFLO, LLC; and FLOW
     SCIENCES INC., individually and on
9   behalf of all others similarly situated,

10              Plaintiffs,                    C12-2184 TSZ

11        v.                                   ORDER

12   DUN & BRADSTREET
     CREDIBILITY CORPORATION;
13   DUN & BRADSTREET
     CORPORATION; and DUN &
14   BRADSTREET, INC.,

15              Defendants.

16        THIS MATTER comes before the Court on the parties' stipulated motion, docket

17   no. 259, to decertify the class. Having reviewed the parties' motion and the record in this

18   matter, the Court enters the following order.

19   **<u>Background</u>**

20        Plaintiffs pursue claims on behalf of themselves and a class of persons in the states

21   of California, New Jersey, North Carolina, Ohio, and Washington who purchased from

22   defendant Dun & Bradstreet Credibility Corporation ("DBCC") a product known as

23

CreditBuilder, an Internet-based system for credit self-monitoring. DBCC acquired

CreditBuilder from defendants Dun & Bradstreet Corporation and Dun & Bradstreet, Inc.

(collectively, "D&B"), along with licenses to use the "Dun & Bradstreet" name, brand,

logo, and trade dress. D&B collects financial information and issues credit reports,

scores, and ratings on businesses, which are used by the government, as well as private

companies, to make contracting and other commercial decisions.

This litigation began as five different lawsuits, each one involving residents of a

particular state. After the parties indicated that they had reached a settlement in principle,

the Court consolidated the cases. *See* Order at 9 (docket no. 241). At the time, each

matter was in a slightly different procedural posture. In *O&R Constr., LLC*, C12-2184,

the earliest filed action, DBCC and D&B had each brought two motions to dismiss, on

which the Court had already ruled. In *Die-Mension Corp.*, C14-855, and *Altaflo, LLC*,

C14-1288, the Court had denied D&B's motions to dismiss, but had granted DBCC's

motions to dismiss; plaintiffs had been given leave to amend, but no amended pleading

had yet been filed. In *Flow Sciences, Inc.*, C14-1404, both D&B's and DBCC's motions

to dismiss had been denied. Finally, in *Vinotemp Int'l Corp.*, C14-1021, although D&B's

motion to dismiss had been denied, DBCC's motion to dismiss was still pending when

the parties announced their settlement.

Plaintiffs sought preliminary approval of the settlement negotiated with defendants

on four separate occasions. Their first motion was woefully inadequate. *See* Order

(docket no. 223). It contemplated that defendants would fund an escrow account in the

amount of $2.75 million, from which attorney's fees, litigation expenses, notice and

claims administration fees, taxes and tax-related expenses, incentive awards to the class representatives, and pro rata payments to class members would be paid. Plaintiffs' counsel, however, failed to indicate how much in litigation expenses, notice and claims administration fees, and tax-related expenses would be deducted from the escrow account in advance of any pro rata distribution to class members, and the Court could not begin to calculate how much class members might receive or evaluate whether the proposed settlement was fair, reasonable, adequate, and in the best interests of the class. _Id._ at 3-4. The Court was also dissatisfied with the proposed "opt-in" system devised by the parties, pursuant to which class members would be required to submit a nine-page claim form to obtain their shares of the settlement proceeds. _Id._ at 4-5 & n.2.

The second motion was similarly deficient. _See_ Minute Order (docket no. 234). Although the previously missing anticipated expenses were provided, plaintiffs did not provide the information necessary to understand what amounts class members might reasonably expect to receive via a pro rata allocation. _Id._ at ¶ 1(a). As it had in ruling on the first motion, the Court again encouraged the parties to consider arranging for fixed (rather than pro rata) amounts to be awarded to class members. _See id._ at 3 n.1.

On their third try, plaintiffs submitted a declaration from the proposed Settlement Administrator, purporting to set forth the expected statistical distribution of payments to class members. _See_ Order (docket no. 241). The Settlement Administrator's calculations were, however, flawed, _see id._ at 3-4 & nn. 1 & 2, and were, as the attorneys and the Court later learned, based on an incomplete set of data, _see_ Supp. Br. (docket no. 250). The Court nevertheless concluded that a pro rata distribution of the net settlement funds

might be practicable and potentially fair, reasonable, adequate, and in the best interests of the class. Order at 5 (docket no. 241). As a result, the Court certified a class for settlement purposes and consolidated the five cases, but deferred scheduling a final approval hearing until after the parties addressed specific concerns, including their identification of an inappropriate cy pres recipient, their failure to disclose the amount each named plaintiff would receive in addition to any incentive award, deficiencies in the proposed notices to class members, problems with the proposed procedures for class members to inspect pleadings and other papers related to this litigation, to view Class Counsel's motion for attorney's fees and costs, and to submit objections, and troubling provisions of the Second Amended Stipulation of Settlement that would permit or require settlement funds to be invested in government securities and allow disbursement of settlement funds without Court authorization. _Id._ at 5-9.

On their last attempt, plaintiffs cured many of the issues outlined by the Court, but they still could not demonstrate that a pro rata distribution was workable, fair, reasonable, adequate, and in the best interests of the class. _See_ Order (docket no. 256). In this final effort, plaintiffs proposed to modify the class definition to cover a more limited class period and fewer of the types of products sold by defendants. _Id._ at 2. The class, as altered, would consist of 64,544 members. Notably, this number was almost 85% higher than the class size projected in the first motion for approval of the class settlement, which involved a much longer class period. _See_ Order at 3 (docket no. 223) (plaintiffs' first motion estimated a class of 35,000). By the second motion, the number of class members had grown to 89,719, and by the third motion, the class size was anticipated to be 95,502.

*See* Minute Order at ¶ 1 (docket no. 234); Order at 3 (docket no. 241). Given the wide fluctuations in class size, the Court expressed significant doubt about whether the class had been defined in a principled fashion. Order at 3 (docket no. 256).

Moreover, the Settlement Administrator repeated the same mathematical errors previously exposed by the Court, *see id.* at 2 n.1, and offered no statistically-based method of understanding the range or frequencies of particular pro rata recoveries, *id.* at 4. The Settlement Administrator did not even accurately indicate the number of class members who would recover nothing under the proposed pro rata scheme. *Id.* at 3-4 & n.2 (noting that, although the Settlement Administrator indicated 3,317 class members (over 5.1% of the class) have a Net Purchase Amount of $0 or less and would not receive any portion of the settlement fund, the Settlement Administrator failed to disclose how many class members have a Net Purchase Amount below $0.49, and would also not receive any of the settlement proceeds because their pro rata share would be less than $0.01). What appeared to be clear, however, from the Settlement Administrator's table of award amounts was that over 5,200 class members would get $2 or less and over 53% of the class would collect $20 or less, while 37 entities would each be paid in excess of $200. *Id.* at 2-4 (citing Joaquin Decl. at ¶ 7 (docket no. 252)). The Court was unwilling to approve of a settlement with such disparities in recoveries and in which a substantial portion of the class would forfeit all rights of action in exchange for no, or virtually no, monetary award. *Id.* at 5. The Court was further reluctant to endorse a scheme that might incur more in postal expenses than the amount disbursed to class members and might simply funnel the settlement funds to the cy pres recipient. *Id.*

After four failed attempts spanning over 15 months, the parties were advised that the Court would not approve of a proposed class settlement in which the proceeds were distributed in a pro rata fashion. *Id.* Without explanation concerning why settlement funds cannot be disbursed in fixed amounts to class members, counsel have informed the Court that the parties are unable to reach a settlement and they wish to decertify the class, rescind the appointments of Class Representatives, Class Counsel, the Escrow Agent, and the Settlement Administrator, and have this matter set for trial. They have not, however, requested that the five cases be severed.

**Discussion**

The Court recognizes that the principal feature of the parties' proposed class settlement was a requirement that defendants add, for a period of at least two years, a full-time employee whose primary responsibility would be to respond to, and enhance the quality of responses to, trade disputes. (Defendants could, of course, hire such person without entering into any settlement with plaintiffs.) The Court is also cognizant of the weaknesses of plaintiffs' claims against DBCC, most of which have been dismissed, albeit with leave to amend. Thus, the Court does not take lightly the pending request to decertify the class and unwind the efforts to date toward a resolution of this matter that would be favorable to plaintiffs and similarly-situated entities. Although the Court is not convinced that counsel have fully explored the possibility of a settlement pursuant to which class members would receive fixed amounts, perhaps in two, three, or more tiers, the Court must refrain from playing any role in the parties' negotiation process and will respect and accept the lawyers' representation that the parties cannot reach agreement.

## Conclusion

For the foregoing reasons, the Court ORDERS:

(1)     The parties' stipulated motion, docket no. 259, to decertify the class is GRANTED;

(2)     The class of "all persons in the states of California, New Jersey, North Carolina, Ohio, and Washington who purchased a CreditBuilder product between August 1, 2010, and January 24, 2017," _see_ Order at 10, ¶ 2 (docket no. 241), is hereby DECERTIFIED;

(3)     The appointments of O&R Construction, LLC; Die-Mension Corporation; Vinotemp International Corporation; CPrint, Inc.; Altaflo, LLC; and Flow Sciences Inc. as Class Representatives are RESCINDED;

(4)     The appointments of Robbins Geller Rudman & Dowd LLP; Stritmatter Kessler Whelan Koehler Moore Kahler; Shanberg, Stafford & Bartz LLP; and Landskroner • Grieco • Merriman, LLC as Class Counsel are RESCINDED;

(5)     The appointments of Robbins Geller Rudman & Dowd LLP as Escrow Agent and of Gilardi & Co LLC as Settlement Administrator are RESCINDED;

(6)     The original five cases shall remain consolidated for pretrial purposes, but the Court reserves ruling on whether the cases should be severed for trial;

(7)     DBCC's motion to dismiss, filed as docket no. 95 in C14-1021 TSZ, is GRANTED; a separate order will be issued explaining the Court's reasoning;

1    (8)    Plaintiffs shall electronically file their consolidated complaint on or before

2  January 19, 2018; such consolidated complaint may not include any new allegations or

3  claims against D&B;

4    (9)    Any responsive pleading or motion by DBCC shall be filed within twenty-

5  one (21) days after the consolidated complaint is filed; D&B may, but is not required to,

6  file an answer to the consolidated complaint, but D&B shall not bring any further motion

7  under Federal Rule of Civil Procedure 12; and

8    (10)    Trial in this matter is hereby SET for March 4, 2019; a separate scheduling

9  order setting related dates and deadlines will be issued.

10    The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

11    IT IS SO ORDERED.

12    Dated this 21st day of December, 2017.

Thomas S. Zilly
United States District Judge