1

2

3

4           UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
5                  AT SEATTLE

6   O&R CONSTRUCTION, LLC;
    DIE-MENSION CORPORATION;
7   VINOTEMP INTERNATIONAL
    CORPORATION; CPRINT, INC.;
8   ALTAFLO, LLC; and FLOW SCIENCES
    INC., individually and on behalf of all
9   others similarly situated,                    C12-2184 TSZ

10                   Plaintiffs,
                                                    ORDER
11            v.

12  DUN & BRADSTREET CREDIBILITY
    CORPORATION, et al.,
13
                     Defendants.
14

15          THIS MATTER comes before the Court on a motion to dismiss, docket no. 95 in

16  Case No. 14-1021 TSZ, brought by defendant Dun & Bradstreet Credibility Corporation

17  ("DBCC").  Having reviewed all papers filed in support of, and in opposition to, DBCC's

18  motion, the Court enters the following order.

    **Background**
19
            Plaintiffs Vinotemp International Corporation ("Vinotemp") and CPrint, Inc.
20
    ("CPrint") brought an action on behalf of themselves and a class of all entities in
21
    California that purchased DBCC's product known as CreditBuilder, which is an Internet-
22
    based system for credit self-monitoring.  Plaintiffs' suit has since been consolidated with
23

    ORDER - 1

four other matters involving residents in other states, *see* Order at 9-10 (docket no. 241);

however, DBCC's motion is focused solely on the claims pursued under California law.

DBCC acquired CreditBuilder from defendants Dun & Bradstreet Corporation and Dun

& Bradstreet, Inc. (collectively, "D&B"), along with licenses to use the "Dun &

Bradstreet" name, brand, logo, and trade dress.  D&B collects financial information and

issues credit reports, scores, and ratings on businesses, which are used by the

government, as well as private companies, to make contracting and other commercial

decisions.

     According to plaintiffs, when businesses contact D&B concerning any problem

with their credit reports, they are "uniformly and seamlessly routed to a DBCC sales

representative who tries to sell them CreditBuilder, rather than attempt to fix the

problem."  Am. Compl. at ¶ 22 (C14-1021, docket no. 93).  Plaintiffs do not allege,

however, that they were solicited in this manner by DBCC.  Instead, Vinotemp indicates

that it received marketing materials bearing the "Dun & Bradstreet" logo, presumably via

U.S. mail, as well as two e-mails, one in October 2010, from a dnb.com (D&B) address,

and one in May 2011.  *Id.* at ¶¶ 57–59.  The latter e-mail "positioned CreditBuilder as a

D&B related product" and touted it as "the only way to improve [credit] scores."  *Id.* at

¶ 59.

     Vinotemp was also solicited in January 2012, but the Amended Complaint does

not specify whether the contact was by letter, e-mail, or telephone.  *See id.* at ¶¶ 44, 46, &

52.  During this communication, which apparently occurred on January 23, 2012, *see id.*

at ¶ 52, DBCC allegedly told Vinotemp that a "high volume of companies" had made

ORDER - 2

1  inquiries about it, and that its scores indicated "a 'significant' likelihood of severe

2  financial stress" in the upcoming year and a "low proportion of satisfactory payment

3  experiences to total payment experiences." *Id.* at ¶¶ 44, 46, & 52.  Plaintiffs do not assert

4  that these statements were inconsistent with Vinotemp's D&B profile, but rather that its

5  D&B credit report was premised on false or inaccurate data.

6      CPrint also received marketing materials bearing the "Dun & Bradstreet" logo, but

7  the date and manner in which the items were sent by DBCC is not described in the

8  operative pleading.  *See id.* at ¶ 82.  CPrint alleges it was advised by DBCC in June 2011

9  that "CreditBuilder was a 'D&B solution' to its poor scores," but it fails to indicate how

10  this information was conveyed.  *See id.* at ¶ 83.  Plaintiffs assert that, in addition to using

11  marketing materials bearing D&B's logo, DBCC referred to D&B's databases as "***our***"

12  databases, described credit reporting functions performed by D&B as something "we" do,

13  and indicated that "companies are coming to ***us***" (as opposed to D&B) for credit reports.

14  *Id.* at ¶ 28 (emphasis in original).  Plaintiffs have not, however, set forth when or in what

15  context DBCC made such statements to either of them.

16      Plaintiffs contend that, because D&B "seeded" their respective credit reports with

17  false information,[1] each company "believed it had no choice" but to enroll in or purchase

18  CreditBuilder.  *Id.* at ¶¶ 60 & 84.  Vinotemp bought the product on three occasions,

19  namely on October 28, 2010, for $549.00, on November 21, 2012, for $799.00, and on

20

21  [1] Plaintiffs concede that DBCC was not advised by D&B of any actions taken by D&B to inflate the
22  number of credit inquiries about a business, which would negatively impact its credit rating.  *See* Am.
    Compl. at ¶¶ 6, 39, 50, 53, 76, 78 (C14-1021, docket no. 93).

23

ORDER - 3

November 29, 2013, for $1,100.00. *Id.* at ¶ 42. CPrint made two purchases, first in June 2011 for approximately $850.00, and then again in June 2012 for $799.00. *Id.* at ¶ 67. Plaintiffs allege that they were confused by various representations made by DBCC and would not have bought CreditBuilder but for these representations. *See id.* at ¶¶ 63–64 & 87–88.

Plaintiffs accuse DBCC of representing that CreditBuilder was "the solution to false entries" on their respective credit reports, and indicate that they would not have purchased the product but for such representation. *Id.* at ¶¶ 64 & 88. Plaintiffs assert that, despite purchasing CreditBuilder, false items continued to appear on their respective credit reports. *Id.* at ¶¶ 65 & 89. Plaintiffs have brought three claims against DBCC, namely violation of California's Unfair Competition Law ("UCL"), violation of California's False Advertising Law ("FAL"), and negligent misrepresentation. DBCC has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss these claims.

**Discussion**

**A.    Standard for Motion to Dismiss**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must indicate more than mere speculation of a right to relief. *Id.* When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558. A complaint may be lacking for one

of two reasons:  (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  *E.g.*, *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief.  *Twombly*, 550 U.S. at 570.  If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

**B.**  **California's Unfair Competition Law and False Advertising Law**

The UCL defines "unfair competition" to include any business act or practice that is (1) unlawful, (2) unfair, or (3) fraudulent, as well as (4) any advertising that is "unfair, deceptive, untrue or misleading" and (5) any act prohibited by the FAL.  Cal. Bus. & Prof. Code § 17200.  The FAL prohibits the dissemination of advertising that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  *Id.* at § 17500; *see In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 95 (Cal. Ct. App. 2009).  The remedies available under the UCL and FAL are limited; prevailing plaintiffs are entitled only to injunctive relief and restitution,[2] and they may not recover damages.  *In re Vioxx*, 103 Cal. Rptr. 3d at 95; *see Prakashpalan v.*

---

[2] Restitution may be computed as the "excess of what the plaintiff gave the defendant over the value of what the plaintiff received."  *See Safeway, Inc. v. Superior Court of L.A. Cnty.*, 190 Cal. Rptr. 3d 131, 150 (Cal. Ct. App. 2015).  To recover such measure of restitution, a plaintiff must present evidence concerning the actual value of what the plaintiff obtained from the defendant, which may consist of the market price of another, comparable product.  *Id.*; *see In re Vioxx*, 103 Cal. Rptr. 3d at 96.

ORDER - 5

1 *Engstrom, Lipscomb & Lack*, 167 Cal. Rptr. 3d 832, 856 (Cal. Ct. App. 2014); *see also*

2 *Cacique, Inc. v. Robert Reiser & Co.*, 169 F.3d 619, 624 (9th Cir. 1999). Moreover,

3 attorney fees are not available under the UCL or the FAL. *See Cel-Tech Commc'ns, Inc.*

4 *v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999); *see also Benson v. S. Cal. Auto*

5 *Sales, Inc.*, 192 Cal. Rptr. 3d 67, 74-74 & n.5 (Cal. Ct. App. 2015) (observing that the

6 statutes do not authorize attorney fees, but a plaintiff can seek attorney fees under Cal.

7 Civ. Proc. Code § 1021.5 if the plaintiff satisfies the "private attorney general"

8 requirements).

9        The first "unlawful" prong of the UCL borrows from, and makes actionable the

10 violation of, laws other than the UCL and FAL. *See* Cal Bus. & Prof. Code § 17200; *see*

11 *also Prakashpalan*, 167 Cal. Rptr. 3d at 855-56. Plaintiffs do not appear to rely on this

12 provision; they have not alleged that DBCC violated any statute other than the FAL. The

13 second alternative prong of the UCL is implicated if a business practice is "unfair,"

14 which is determined by weighing "the utility of the defendant's conduct" against "the

15 gravity of the harm to the alleged victim." *Prakashpalan*, 167 Cal. Rptr. 3d at 856. The

16 third way of violating the UCL is to engage in a "fraudulent" business act, meaning one

17 that is likely to deceive consumers or members of the public, *id.*, and on which the

18 plaintiff actually relied, *see In re Tobacco II Cases*, 207 P.3d 20, 40-41 (Cal. 2009). The

19 fourth basis of liability under the UCL is the use of "advertising" likely to deceive

20 members of the public, as measured from the vantage point of the targeted audience,

21 which might be more or less sophisticated than the ordinary consumer. *See In re Vioxx*,

22 103 Cal. Rptr. 3d at 96. The focus of the inquiry is the reasonable consumer who is a

23

ORDER - 6

member of the target population.  *Id.*; *see Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012) (a reasonable "ordinary" consumer is one "not versed in the art of inspecting and judging a product"); *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1196 (N.D. Cal. 2012) (considering the plaintiff's sophistication as an attorney in concluding he could not have reasonably relied on the allegedly untrue or misleading statements).

To have standing to sue under the UCL and FAL, a plaintiff must meet two tests: (i) economic injury in fact; and (ii) causation or reliance.  *See Kwikset Corp. v. Superior Court of Orange Cnty.*, 246 P.3d 877, 885 (Cal. 2011).  These requirements stem from Proposition 64, which was passed by California voters in 2004.  *See id.* at 884; *see also* Cal. Bus. & Prof. Code §§ 17203, 17204, & 17535.  Proposition 64 was aimed at curtailing certain lawsuits, including those filed on behalf of individuals "who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant."  2004 Cal. Legis. Serv. Prop. 64, § 1(b)(3) (West).  Pursuant to Proposition 64, actions under the UCL and FAL may be prosecuted only "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition" or statutory violation.  Cal. Bus. & Prof. Code §§ 17204 & 17535.  In *Kwikset*, the California Supreme Court observed that, for purposes of the UCL and FAL, standing has a narrower meaning than under Article III of the United States Constitution.  246 P.3d at 886.  The intangible injury on which federal standing may be premised is not sufficient under the UCL and FAL; rather, the "injury in fact" must involve "lost money or property."  *Id.*

ORDER - 7

Prior to Proposition 64, California courts had relieved plaintiffs proceeding on a fraud theory under the UCL of the obligation to prove actual reliance on the statement at issue. *See* *Mass. Mut. Life Ins. Co. v. Superior Court of San Diego Cnty.*, 119 Cal. Rptr. 2d 190, 193 (Cal. Ct. App. 2002). Given the phrase "as a result of the unfair competition," which was incorporated into the UCL and FAL by Proposition 64, the California Supreme Court now requires that a plaintiff whose claim is based on an alleged misrepresentation demonstrate actual reliance "in accordance with well-settled principles . . . in ordinary fraud actions." *Kwikset*, 246 P.3d at 888. With respect to the other theories of liability under the UCL, the *Kwikset* Court concluded that the "as a result of" language grafted onto the statute by Proposition 64 connotes, and requires a showing of, causation. *Id.* at 887. The *Kwikset* Court added, however, that a plaintiff need not allege the challenged act of the defendant was "the sole or even the decisive cause" of the injury. *Id.* at 888.

Having reviewed the Amended Complaint, the Court is persuaded that plaintiffs have not sufficiently pleaded causation or reliance to demonstrate standing to pursue their claims under the UCL and FAL. According to the operative pleading,[3] Vinotemp received an e-mail from a dnb.com address in October 2010, presumably before its first purchase of CreditBuilder on October 28, 2010. Such e-mail apparently came from

---

[3] In its motion to dismiss, DBCC refers to allegations in the original Complaint that are not included in the Amended Complaint. The Court declines to consider such facts, which are outside the operative pleading. *See* Fed. R. Civ. P. 12(d); *see also* *Santana v. Cal. Dep't of Corr. & Rehab.*, 2010 WL 4176364 at *7 (N.D. Cal. Oct. 19, 2010) (indicating that an amended pleading supersedes the original pleading and that facts in the original complaint, which were not incorporated into the amended pleading, cannot be considered in deciding a motion to dismiss the amended complaint (citing cases from the Second, Fourth, Fifth, Seventh, Eighth, and Ninth Circuits)).

ORDER - 8

D&B, not DBCC, _see_ Am. Compl. at ¶ 21 (C14-1021, docket no. 93) ("www.dnb.com" is

D&B's web address), and attempted to impress upon Vinotemp the importance of

renewing its subscription to a D&B product (a predecessor of CreditBuilder) "to keep its

D&B ratings updated," especially because "other companies had made inquiries into

Vinotemp's D&B report," _id._ at ¶ 58.  Plaintiffs do not specify how the October 2010

e-mail was "unfair, deceptive, untrue or misleading," as opposed to non-actionable

puffery, _see Elias_, 903 F. Supp. 2d at 855, and they fail to explain how the e-mail,

authored by a different company concerning a different product, caused Vinotemp to buy

CreditBuilder from DBCC.

      With respect to the solicitations Vinotemp received in May 2011 and January

2012, the lack of temporal connection to Vinotemp's purchases of CreditBuilder in

November 2012 and November 2013 renders implausible plaintiffs' claim that

Vinotemp's injury was caused by those solicitations.  Rather, Vinotemp appears to have

bought CreditBuilder in November 2012 after being rejected as a vendor by Wal-Mart.

_See_ Am. Compl. at ¶ 47 (C14-1021, docket no. 93).  In addition, even if sufficiently close

in time to the purchase decision, the May 2011 and January 2012 solicitations are not

alleged to have contained representations of fact that DBCC knew or should have known

were false.  _See supra_ note 1.

      The operative pleading is even less detailed with regard to CPrint.  CPrint attempts

to correlate its purchase of CreditBuilder in June 2011 with a statement made by DBCC

in June 2011, via an unspecified method, that CreditBuilder was "a 'D&B solution' to its

poor scores."  Am. Compl. at ¶ 83 (C14-1021, docket no. 93).  Plaintiffs do not explain

ORDER - 9

how such puffery would be actionable. *See Elias*, 903 F. Supp. 2d at 855. Moreover,

even if the June 2011 representation was somehow "unfair, deceptive, untrue or

misleading," it was far too remote in time to have plausibly caused CPrint to again buy

CreditBuilder on June 6, 2012. The Amended Complaint does not describe with

particularity any other communication between CPrint and DBCC or any advertisement

on which CPrint relied in making its purchase decisions. The Amended Complaint also

fails to indicate how or why CPrint would have acted differently in the absence of

whatever representations DBCC might have made. *See id.* at 855 n.3. Plaintiffs simply

have not established that CPrint has standing to sue under the UCL and/or the FAL.

**C.      Negligent Misrepresentation**

Under California law, to prove negligent misrepresentation, a plaintiff must show:

(1) the defendant stated a past or existing material fact; (2) the defendant did not have a

reasonable ground for believing the fact to be true; (3) the defendant made the statement

with the intent to induce another's reliance on the misrepresentation; (4) the plaintiff

justifiably relied on the misrepresentation; and (5) the plaintiff suffered damage as a

result. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cambridge Integrated Servs.*

*Group, Inc.*, 89 Cal. Rptr. 3d 473, 483 (Cal. Ct. App. 2009). California courts recognize

four circumstances in which a failure to disclose is actionable: (i) the parties have a

fiduciary relationship; (ii) the defendant has exclusive knowledge of material facts not

known or reasonably accessible to the plaintiff; (iii) the defendant actively conceals a

material fact from the plaintiff; and (iv) the defendant makes partial representations that

are misleading because another material fact has not been disclosed. *Elias*, 903 F. Supp.

1  2d at 856 (quoting *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 593 (Cal. Ct. App.

2  2011)).  A fact is "material" if a reasonable consumer would "deem it important in

3  determining how to act in the transaction at issue."  *Id.*

4      In Count III of the Amended Complaint, plaintiffs list fourteen (14) alleged

5  misrepresentations by DBCC, which fall into three groups:  (i) statements touting the

6  benefits of CreditBuilder; Am. Compl. at ¶¶ 120(b), (i), & (l)–(n) (C14-1021, docket

7  no. 93); (ii) statements blurring the distinction between DBCC and D&B, including those

8  using the plural pronouns "we," "our," and "us" to describe DBCC's business; *see id.* at

9  ¶¶ 120(a) & (c); and (iii) statements about a business's credit profile; *id.* at ¶¶ 120(d)–(h)

10  & (j)–(k).  With respect to the first category, plaintiffs' allegations that DBCC touted

11  CreditBuilder as the "solution" to their credit woes, or as something that would "help"

12  plaintiffs and provide a "meaningful process for disputing negative trade experiences,"

13  recount mere puffery and, absent more specificity, are not actionable.  *See De Paoli v.*

14  *Hendrick Auto. Group*, 2009 WL 2248550 at *4 (Cal. Ct. App. July 29, 2009) ("'Puffery'

15  or 'puffing' is a seller's statement of its subjective opinion about the merits of a product,

16  as opposed to a factual description of a characteristic of the product." (citing *inter alia*

17  *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (whether

18  a statement is one of fact or mere puffery is a legal question that may be resolved on a

19  Rule 12(b)(6) motion, and "a general, subjective claim about a product is non-actionable

20  puffery"))).

21      As to any confusion about the relationship between DBCC and D&B, plaintiffs'

22  pleading lacks the specificity required to state a plausible claim.  Plaintiffs do not indicate

23

ORDER - 11

1  when, in what context, or to whom DBCC made the statements at issue.  Moreover,

2  plaintiffs have not even alleged that DBCC failed to exercise reasonable care or

3  competence in making such representations.  Finally, with regard to statements about a

4  business's credit profile, including (i) those concerning the number of "unique" inquiries

5  being made, some of which were duplicates or D&B's own inquiries, and (ii) those

6  indicating that DBCC had accurate, up-to-date information, when it did not, plaintiffs'

7  negligent misrepresentation claim is belied by their acknowledgement that DBCC was

8  not advised by D&B about any "padding" of the inquiries.  *See* *supra* note 1.

9  **Conclusion**

10       For the foregoing reasons, the Court ORDERS:

11       (1)     DBCC's motion to dismiss, docket no. 95 in C14-1021, is GRANTED;

12       (2)     Counts I, II, and III of the Amended Complaint, docket no. 93 in C14-1021,

13  are DISMISSED, without prejudice, and with leave to amend via consolidated complaint

14  electronically filed by January 19, 2018; and

15       (3)     The Clerk is DIRECTED to send a copy of this Order to all counsel of

16  record.

17       IT IS SO ORDERED.

18       Dated this 21st day of December, 2017.

19

20

21                                                Thomas S. Zilly
                                                  United States District Judge

22

23

ORDER - 12